IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHNNY L. GREEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-0291-L |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's Order of Reference, entered June 1, 2007, the District Court referred Plaintiff's social security appeal, filed February 13, 2007, to the United States Magistrate Judge for hearing, if necessary, and recommendation. This is an appeal from the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Johnny L. Green's ("Plaintiff") claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act brought pursuant to 42 U.S.C. § 405(g). Commissioner filed a response on August 13, 2007. Plaintiff filed a reply on September 27, 2007. The Court reviewed the record in connection with the pleadings. For the reasons stated below, the Court recommends that the final decision of the Commissioner be REVERSED and REMANDED for further proceedings.

## BACKGROUND

**Procedural history:**

Plaintiff protectively filed applications for DIB and SSI on December 9, 2002. (Tr. 88–90.) After both applications were denied initially and on reconsideration, Plaintiff properly filed for a hearing before Administrative Law Judge William B. Churchill ("ALJ"). (Tr. 23.) Plaintiff; a vocational expert ("VE"), Tammy Donaldson; and Plaintiff's friend, Jennifer Furgason ("Ms. Furgason"), testified at the hearing on August 18, 2004. (Tr. 349–73.) Following the ALJ's decision, Plaintiff requested a review by the Appeal's Council, which was denied on December 15, 2006. (Tr. 4–6.) After exhausting all of his administrative remedies, Plaintiff filed this action.

**Plaintiff's Age, Education, and Work Experience:**

Plaintiff was born on November 15, 1953. (Tr. 88.) At the time of the decision, Plaintiff was fifty years old and considered to be approaching advanced age. 20 C.F.R. § 404.1563. Plaintiff has the equivalency of a high school education. (Tr. 24.) He is considered to have a "high school education and above" for vocational purposes. 20 C.F.R. § 404.1564. Prior to the onset of his alleged disability, Plaintiff worked primarily as an aircraft cabinet maker. (Tr. 24.)

**Plaintiff's Medical Evidence:**

Plaintiff was first injured on January 17, 1997. (Tr. 213.) He injured his lower back while unloading boxes from a van. (*Id.*) His treating physician, Dr. George Wharton ("Dr. Wharton"), diagnosed Plaintiff with disc disruption syndrome at both L5-S1 and L4-L5. (Tr. 196.) Various other injuries included lumbosacral strain, bilateral hamstring contractures, chronic low back pain, lumbar facet syndrome, myofascial pain syndrome, and instability at L4-L5. (Tr. 147.) After therapy, Plaintiff was able to return to work on August 5, 1997. (Tr. 25.) On December 17, 1997,

Plaintiff re-aggravated his previous injury at L5-S1 and L4-L5. (*Id.*) On December 30, 1997, Dr. Wharton determined that Plaintiff would not be able to return to work. (Tr. 25.) Plaintiff was subsequently terminated from his job. (*Id.*) After several months of physical therapy was unsuccessful, Plaintiff underwent an anterior fusion at L4-5/L5-S1 on January 6, 1999. (Tr. 166, 239–40.) However, the surgery ultimately proved unsuccessful, and Plaintiff underwent posterior stabilization in April 2001. (Tr. 166–69.) Initially, the second fusion seemed to be a success, and Plaintiff was ready to start physical therapy on May 3, 2001. (Tr. 283.) On August 2, 2001, Plaintiff was preparing to go on a vacation. (Tr. 287.) However, by March 28, 2002, Plaintiff was still experiencing "fairly severe back pain" and was switched to a new pain medication. (Tr. 290.) On August 6, 2002, Dr. Wharton stated that Plaintiff's pain was "way out of my league so far as being able to offer him further progress beyond where he is at this time." (Tr. 291.) He also indicated that Plaintiff should be evaluated by Dr. Fitzpatrick, a pain management specialist and psychiatrist, for depression and pain management. (*Id.*) From August 6, 2002 until the date of the hearing, Plaintiff's treatment history consisted of prescriptions for various pain medications and antidepressants. (Tr. 153–57.)

On April 14, 2003, Plaintiff was examined by a state agency medical consultant, Dr. Wolfram, who found that Plaintiff can sit, stand, and walk without restriction, but with pain. (Tr. 124.) He also found that Plaintiff can bend and he can lift only moderate weights because of his back injury. (*Id.*) On April 15, 2003, Plaintiff was examined by another state agency medical consultant, a psychologist, Dr. McCabe. (Tr. 127.) Dr. McCabe noted that Plaintiff was able to drive himself to the site of the examination and found that Plaintiff had normal psychomotor activity and that there was no evidence of ticks, tremors, lethargy, restlessness, rigidity, or stereotypical

3

movements. (Tr. 127–29.) Dr. McCabe found that Plaintiff's speech was normal and that Plaintiff's stream and content of thought were normal, but his recent memory was marginal. (Tr. 129.) Additionally, Plaintiff's affect was flexible, but his mood was depressed. (*Id*.) Dr. McCabe also found that Plaintiff's immediate memory and concentration were modestly intact. (*Id*.) Plaintiff was seen again by Dr. Wharton on August 3, 2004, when it was determined that he still required significant amounts of pain medication. (Tr. 196)

**The Hearing:**

The hearing before the ALJ was held on August 18, 2004. (Tr. 23.) Plaintiff was reminded of his right to a representative to help with his case. (Tr. 5.) However, Plaintiff elected to proceed without counsel. (*Id*.) At hearing, Plaintiff, the VE, and Ms. Furgason testified. (Tr. 349–73.) A summary of the testimony follows.

### Plaintiff's Testimony:

Plaintiff testified that he quit working after re-injuring his back in December 1997. (Tr. 357.) However, he was not entitled to workers' compensation for the second injury because it was related to his previous injury in 1997 for which he had already achieved maximum medical improvement. (*Id*.) Plaintiff also testified that he waited almost four years to file his disability and social security claims because he hoped he would regain his health and return to work. (Tr. 357–58.) While the first surgery eliminated his upper back pain, Plaintiff testified that neither surgery alleviated the pain in his hips and pelvis. (Tr. 358.)

Plaintiff also suffers from spasms in his rectum. (*Id*.) The spasms are especially painful and bring Plaintiff to tears. (Tr. 359.) Plaintiff testified that Dr. Fitzpatrick, a pain specialist and psychiatrist, currently has Plaintiff regularly taking morphine for pain and Wellbutrin for his

4

depression and suicidal thoughts. (Tr. 360–61.) In addition to these medications, he also takes Gabitril to treat his nerve damage and Provigil to help him get "motivated." (*Id.*) Plaintiff testified that he used to have suicidal thoughts; however, they have gone away since he started taking Wellbutrin. (Tr. 361.)

Plaintiff also asserts that he cannot use his hands or arms when he is sitting because he needs to use them to hold himself up in order to avoid putting pressure on his back. (Tr. 362.) Plaintiff increasingly suffers from numbness in his toes that moves up his legs. (*Id.*) In addition to the numbness, Plaintiff also has a "pins and needles sensation" in his legs. (Tr. 363.) When Plaintiff missteps, it causes a shooting pain from his pelvis down to his toes. (*Id.*) When Plaintiff stands, sits, or walks for more than thirty minutes, he has spasms. (*Id.*) Additionally, if Plaintiff sits in the same position for more than twenty minutes, his leg becomes numb and the numbness can last for hours. (Tr. 363–64.) When Plaintiff walks around for a prolonged period of time, his legs become weak. (Tr. 364.) Plaintiff also uses a cane; however, it was not prescribed. (*Id.*) While Plaintiff testified that his condition is getting worse, he is still able to drive a car, cook dinner, clean dishes, take his cats outside, and shop for groceries. (Tr. 365–66.) During an eight hour work day, Plaintiff claims that he has to lie down for six hours. (Tr. 366.) If he does not lie down, the pain builds up and his legs become numb for several hours. (Tr. 366–67.) Plaintiff used to sew footbags, but he is no longer able to because he cannot sit for forty-five minutes, and he is unable to bend over. (Tr. 367.) According to Plaintiff, he cannot pick up more than five or six pounds off the ground, but he can carry about twenty pounds over short distances if he picks the weight up from table height. (367–68.) Plaintiff testified that he is currently taking 300 mg of morphine a day, which makes him feel stupid and slow. (Tr. 369.) He does not believe that he can take any more pain medication

5

without becoming incoherent. (*Id*.) The morphine only helps him control his constant pain, and does not provide relief from the flare ups when he missteps. (*Id*.)

**Ms. Furgason's Testimony:**

Plaintiff's girlfriend, Ms. Furgason, also testified at the hearing. She stated that Plaintiff tries very hard to do everything that the doctors have asked him to do, but he still remains in a great deal of pain. (*Id*.) Ms Furgason also stated that she does the house cleaning, yard work, and shopping for Plaintiff. (Tr. 368.) She further testified that while Plaintiff does not vocalize what he is feeling, she can see the pain in his face. (Tr. 369.)

**Vocational Expert's Testimony**

The VE testified that Plaintiff has a high school equivalency. (Tr. 370.) The VE stated that Plaintiff, on the day of the hearing, was closely approaching advanced age. (*Id*.) However, the VE noted that Plaintiff was younger at the onset date. (*Id*.) According to the VE, Plaintiff's past work as a cabinet builder is classified as medium, skilled, with a specific vocational preparation ("SVP") of six. (*Id*.) The VE also recognized that Plaintiff has no skills that are transferable to a "lighter exceptional level." (*Id*.) The ALJ then posed the following hypothetical question to the VE:

> Now assume you have an individual with that vocational profile. Assume that this individual during an eight hour work day can sit for six hours, stand or walk two to four hours. This would require the person to sit and stand, an option during the day. Can lift up to twenty pounds occasionally or ten frequently; push or pull to those weights. Assume that the person could only occasionally crawl or squat or stoop or bend, and could not climb ladders or work at heights. Assume that person had mild deficits in concentration and attention. Would this person, would there be work available within the local, regional or national economy that this person could perform?

(*Id*.) The VE responded that such a person would be able to find work at the light level and the "sedentary exceptional level." (*Id*.) The VE testified that Plaintiff could find employment as an

6

office worker, which is a light, unskilled, job with an SVP of two. (Tr. 371.) She then testified that there are approximately 160,000 such jobs in the national economy and 10,000 in Texas. (*Id*.) The VE also gave an example of unskilled, sedentary work with an SVP of two. (*Id*.) She stated that Plaintiff could work as a call out operator to a credit checker. (*Id*.) There are approximately 15,000 such jobs in the national economy and 1,100 in the Texas economy. (*Id*.) However, the VE also stated that a person who was required to lie down four to six hours a day would be unable to perform those jobs on a competitive basis. (*Id*.) While the ALJ's hypothetical discussed mild deficits in concentration and attention, the ALJ also inquired about a person with moderate deficits in concentration and attention. (Tr. 370.) The VE responded that a person with moderate deficits could possibly perform these jobs, but was unable to quantify "moderate." (Tr. 371.) However, the VE testified that if the impairment caused the person to lose focus while trying to perform assigned tasks, then the person with moderate deficits would be unable to maintain those jobs. (*Id*.) On cross examination, the VE stated that she would be unable to find work for an individual that would allow him to work for only two hours a day. (Tr. 372.) The VE further elaborated that such a situation would not be substantial gainful activity. (*Id*.)

**The Decision:**

The ALJ found that Plaintiff was disabled for the time period between December 15, 1997 and August 1, 2001. (Tr. 28.) However, as of August 1, 2001, the ALJ determined that Plaintiff could "carry twenty pounds occasionally and ten pounds frequently, stand and walk two hours in an eight-hour workday and sit six hours in an eight-hour workday with the opportunity to change positions at will." (Tr. 27.) Furthermore, Plaintiff could "push and pull in the amount of weight given and could occasionally crawl and squat, but never climb ladders ropes or scaffolds to perform

7

work at unprotected heights." (*Id*.) While Plaintiff did have suicidal ideation, the ALJ found that it did not meet the specified duration requirement, and therefore was not a disability. (*Id*.) The ALJ also determined that Plaintiff's deficits in concentration and attention would not preclude his ability to follow routine step instructions. (*Id*.) Thus, the ALJ determined that Plaintiff experienced medical improvement related to his ability to do work on August 1, 2001. (Tr. 28.) While Plaintiff was unable to perform the full range of "light work" activities, the ALJ, relying on the VE's testimony, found that Plaintiff was able to perform a significant number of jobs that exist in the national economy, including an office helper or call out operator. (*Id*.)

## STANDARD OF REVIEW

To be entitled to social security benefits, a claimant must prove that he is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational

> > factors.
>
> 4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.
>
> 5. If an individual's impairment precludes the individual from performing the individual's past work, other factors including age, education, past work experience, and residual functional capacity ["RFC"] must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (Summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability. *Leggett*, 67 F.3d at 564. If the claimant cannot perform past work, the burden shifts to the Commissioner in step five to prove the claimant is able to perform other substantially gainful activity. *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The Commission's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

**ANALYSIS**

Plaintiff argues the following: (1) "the Appeals Council erred in not performing the required six-factor evaluation of the potentially dispositive medical opinion of treating orthopedic surgeon, Dr. Wharton, and in failing to explain the Council's conclusion that his opinion is not 'new and material' evidence;" (2) "the ALJ abrogated the medical-opinion rules with respect to the medical opinion of Plaintiff's long time orthopedic surgeon," and "the ALJ's finding that Plaintiff's disability terminated August 1, 2001, is not supported by substantial evidence;" and (3) "the ALJ's failure to make a finding as to Plaintiff's RFC before August 1, 2001, shows noncompliance with the 'medical improvement' standard set forth in 20 C.F.R. § 404.1594." (Pl.'s Opening Br. at 14, 18, 21, 23.)

**1. Dr. Wharton's Medical Source Statement Dated October 2, 2006**

Appearing before the ALJ without counsel, Plaintiff failed to obtain a medical source report from his treating physician, Dr. Wharton. (Tr. 352–53.) However, Plaintiff retained counsel after his hearing, and obtained a medical source statement from Dr. Wharton for his appeal of the ALJ's decision to the Appeals Council. (Tr. 8.) The Social Security Administration's regulations outline what information should be contained in a medical report. 20 C.F.R. § 404.1513 (b). The regulations state that the medical source statement is a part of the suggested medical report. *Id*. However, the medical report is not incomplete without a medical source statement. *Id*. The medical source statement represents what the treating physician believes the patient is capable of doing despite the patient's impairments. *Id*. Dr. Wharton's medical source statement details what Dr. Wharton believes Plaintiff is capable of doing despite his impairments. (Tr. 304–05.) Specifically, it indicates how long Plaintiff can stand, walk, sit, lift, reach, and rest each day as a result of his 1997 back injury. (*Id*.)

Dr. Wharton's medical source statement was presented for the first time to the Appeals Council on October 9, 2006. (Tr. 8.) The Appeals Council denied review of the case by form letter that did not mention Dr. Wharton's medical source statement. (Tr. 4–6.) "[U]nder the Commissioner's own regulations, the Commissioner's final decision necessarily includes an Appeals Council's denial of a claimant's request for review." *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Therefore, Dr. Wharton's medical source statement is a part of the record. Additionally "the statute and the regulations, when read in conjunction with one another, require the Appeals Council to consider evidence presented to it for the first time when the evidence is new and material." *Rodriguez v. Barnhart*, 252 F.Supp.2d 329, 336 (N.D. Tex. 2003) (citing 20 C.F.R.§ 404.970(b)). When evaluating the new evidence, "the Appeals Council must follow the same rules for considering [medical] opinion evidence as administrative law judges follow." 20 C.F.R. § 404.1527(f)(3).

In other words, if Dr. Wharton's medical source statement is new and material information, then the Appeals Council should have considered the evidence as an administrative law judge would. *Id*. There are six factors outlined by 20 C.F.R. § 404.1527(d) that an ALJ must use to evaluate medical opinion evidence. *Newton v. Apfel*, 209, F.3d 448, 453 (5th Cir. 2000). First, the ALJ looks at the examining relationship. 20 C.F.R. § 404.1527(d)(1). The second step is the treatment relationship. 20 C.F.R. § 404.1527(d)(2). When looking at the treatment relationship, the ALJ considers the length and frequency of the examinations, and the nature and extent of the treating relationship. *Id*. Third, the ALJ is to consider whether the medical opinion is supported by relevant evidence such as laboratory findings and medical signs. 20 C.F.R. § 404.1527(d)(3). Next, the ALJ takes into account whether or not the medical source statement is consistent with the record as a

whole. 20 C.F.R. § 404.1527(d)(4). Additionally, the ALJ will give more weight to an opinion from an expert if the opinion is within the expert's specialty. 20 C.F.R. § 404.1527(d)(5). Finally, the ALJ is to consider any other factors that the plaintiff presents. 20 C.F.R. § 404.1527(d)(6).

The Appeals Council did not evaluate the new evidence under the six factor test. (Pl's Opening Br. at 16.) However, the Commissioner now argues that the new evidence is in regard to a later acquired disability, or a deterioration of a previously non-disabling condition. (Def.'s Br. at 4.) As a result, the Commissioner states that it was unnecessary for the Appeals Council to conduct the six factor test. (Def.'s Br. at 5) The Commissioner is correct, a later acquired disability or a deterioration of a previously non-disabling condition is not new and material information on appeal. *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985). However, Dr Wharton stated that the information given was related to an injury existing since at least December 1997. (Tr. 305.) Accordingly, the Court finds that Dr. Wharton's medical source statement related to Plaintiff's existing injury, not a later acquired disability or the deterioration of a previously non-disabling condition.

The Commissioner also argues that the information in the report is not material. (Def.'s Br. at 6.) However, Dr. Wharton is the primary treating physician for Plaintiff, and "the opinion of the treating physician who is familiar with the claimant's disability should be accorded great wight in determining disability." *Newton*, 209 F.3d at 455; *see Floyd v. Bowen*, 833 F.2d 529, 531 (5th Cir. 1987). The Social Security Regulations defer to the medical opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of

individual examinations." 20 C.F.R. § 404.1527(d)(2). Dr. Wharton's medical source statement provided the Commissioner with Dr. Wharton's opinion of Plaintiff's injuries from a longitudinal perspective instead of the episodal treatment notes that Dr. Wharton recorded after each visit. Dr. Wharton's medical source statement provided information about Plaintiff's ability to lift and move weights that would have been helpful in determining Plaintiff's RFC. (Tr. 305.) Dr. Wharton's opinion as to Plaintiff's ability to lift and move weights was previously unavailable in the record. Furthermore, the only specific information available to the ALJ regarding Dr. Wharton's opinion as to Plaintiff's ability to sit, stand, and walk were provided in a letter dated August 3, 2004. (Tr. 196.) The statements contained in the August 3, 2004 letter were properly disregarded because the statements were legal conclusions and they were not supported by acceptable clinical laboratory diagnostics techniques.

Opinions of matters reserved to the Commissioner are not medical opinions and need not be analyzed according to the six factor test. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)). Statements that a claimant is "unable to work" or that a claimant is "disabled" are legal conclusions, and as such, they are issues reserved to the Commissioner. *Id.* In Dr. Wharton's August 3, 2004 letter, he states that "[Plaintiff] is incapable of returning to his job as a cabinet maker" and "[Plaintiff] has no other skills which are appropriate for the workplace." (Tr. 196). Then, Dr. Wharton proceeds to list Plaintiff's limitations in sitting, standing, and walking. (*Id.*) In the next sentence Dr. Wharton states that the limitations "make it difficult to identify either a sedentary or light duty job which [Plaintiff] could do even if he could be retrained." (*Id.*) When taken in context, Dr. Wharton's statements concern Plaintiff's limitations as they relate to his ability to find employment, not his ability to function despite his medical

13

impairments. It is the commissioner's duty to determine if a claimant is unable to find employment. *Frank*, 326 F.3d at 620. To this end, the ALJ called VE to testify at Plaintiff's hearing. (Tr. 370–72.) Plaintiff has presented no evidence to indicate that Dr. Wharton is qualified to give an opinion as a vocational expert. Thus, it was within the ALJ's discretion not to evaluate the letter using the six factor test outlined in the regulations because the letter is conclusory.

Furthermore, "when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony." *Greenspan*, 38 F.3d at 237. Good cause has been found where the statement is "not supported by medically acceptable clinical laboratory diagnostic techniques." *Id.* Therefore, before the ALJ is required to give a medical opinion any weight, it must be supported by diagnostic techniques. *Id.* Dr. Wharton states that "[i]maging studies done today show excellent growth of bone across the cages at L4-5 and L5-S1." (Tr. 196.) This is a medical opinion that is supported by clinical laboratory diagnostic techniques, and is consistent with the ALJ's finding of medical improvement. However, nothing contained in the August 3, 2004 letter connects the diagnostic techniques referred to in the letter to the statements in the letter regarding Plaintiff's limitations. Moreover, Plaintiff has not pointed to any other diagnostic techniques that Dr. Wharton is relying upon when estimating Plaintiff's limitations.

On the other hand, Dr. Wharton's medical source statement from October 2, 2006 is based upon accepted diagnostic techniques, in addition to, Dr. Wharton's "clinical evaluation and test findings." (Tr. 304, 313–14.) Therefore, Dr. Wharton's October 2, 2006 medical source statement provides new and material medical opinions by the treating physician in regard to Plaintiff's ability to sit, stand, and walk in addition to Plaintiff's ability to lift and move weights. As a result, the Court finds that Dr. Wharton's medical source statement is both new and material.

14

Additionally, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 445. There is no explanation given by the Appeals Council as to why Dr. Wharton's medical source statement was not considered new and material. (Tr. 4–6.) Furthermore, the Appeals Council gave no indication that it reviewed Dr. Wharton's opinion using the six factor test required by the Social Security Administration's regulations, and did not explain why the test was not used. (*Id.*) The Court cannot weigh the evidence or make the final disability determination. *See Newton*, 209 F.3d at 455. The Court, therefore, finds that this case should be remanded back to the Social Security Administration for further consideration of Dr. Wharton's medical source statement.

**2) Substantial Evidence and Dr. Wharton's Other Statements**

Plaintiff contends that the ALJ's finding that Plaintiff's disability terminated on August 1, 2001 is not supported by substantial evidence. (Pl's Opening Br. at 21.) The Court must evaluate the entire record when determining if substantial evidence supports the ALJ's decision. *Higginbotham*, 405 F.3d at 337. The record includes all evidence presented to the Appeals Council, even the evidence that was not considered by the Appeals Council. *Id.* Furthermore, the court cannot weigh the evidence or substitute its own judgment for that of the Commissioner. *Newton*, 209 F.3d at 455. On remand the Commissioner will consider all of the medical evidence in the record, including Dr. Wharton's medical source statement. 20 C.F.R. § 404.983. Therefore, it is unnecessary to consider whether the ALJ's previous decision is supported by substantial evidence. Likewise, it is also unnecessary for the court to address whether the ALJ's previous decision afforded proper weight to Dr. Wharton's other statements because they too will be reconsidered as part of the evidence on remand.

15

**3) Failure to Determine Plaintiff's RFC Prior to August 1, 2001**

Plaintiff alleges that the ALJ failed to comply with 20 C.F.R. § 404.1594(c) because he did not create a RFC prior to the date of medical improvement. (Pl's Opening Br. at 23.) In closed period disability cases, an ALJ finds that the claimant was disabled at one point, however, there was subsequent medical improvement before the date of the hearing, and the claimant is no longer disabled. In such cases, the ALJ is to use the medical improvement standard to determine that the claimant is no longer disabled. *Waters v. Barnhart*, 276 F.3d 716 (5th Cir. 2002). While it is undisputed that the medical improvement standard is applicable, the parties dispute what is required to fulfill the requirements of the medical improvement standard.

Plaintiff contends that 20 C.F.R. § 404.1594(c) requires a RFC to be determined at the time of the disability date, and a new RFC to be determined at the time of medical improvement. (Pl.'s Opening Br. at 24.) Having an RFC at the time of disability and an RFC at the time of medical improvement allows the ALJ to determine if the medical improvement is related to the plaintiff's ability to do work. (*Id.*) The ALJ looks to what the claimant was able to do at the onset of his disability and then looks to what the claimant is able to do at the time of medical improvement. 20 C.F.R. § 404.1594(c)(2). In order to determine that the medical improvement is related to the ability to do work, the ALJ must look at how each of the factors has changed between the two RFC's. *Id*.

The parties disagree as to what constitutes an RFC for the purposes of a closed period disability case. Neither party has pointed to any authority specifically stating what the ALJ is required to find when determining the original RFC in a closed period disability case. However, the Fifth Circuit has detailed what is required for an RFC in a regular disability case. *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001). In *Myers*, the Fifth Circuit outlined seven strength demands for which

the ALJ must determine a claimant's capacity to perform on a regular and continuing basis. *Id.* The seven strength demands are: sitting, standing, walking, pushing, pulling, carrying, and lifting. *Id.* Here, the ALJ stated that Plaintiff was completely disabled for the period between December 15, 1997 and August 1, 2001. (Tr. 29.) This would be insufficient to constitute an RFC as outlined by *Myers*. *Myers*, 238 F.3d at 620. Originally, the burden of providing an RFC is on the claimant in a disability proceeding (step four of the five step test). 20 C.F.R. § 404.1520(a)(4)(v). In this case, Plaintiff was found to be disabled without providing a detailed RFC. (Tr. 29.) However, Plaintiff now asserts that the ALJ failed to use the proper legal standard when determining the original RFC for purposes of finding medical improvement. (Pl's Opening Br. at 23.) This issue need not be addressed here because 20 C.F.R. § 404.1594(c)(3)(iii) states that the commissioner will recreate an original RFC in cases where the original should have been done and was not. On remand, the ALJ can recreate the original RFC when revisiting whether or not medical improvement has occurred.

## CONCLUSION

The Appeals Council failed to evaluate new and material information according to the methods mandated by its own regulations and the law. As such, the Court finds that this case should be reversed and remanded for proper analysis of Dr. Wharton's medical source statement. On remand, the Commissioner will be examining the record anew, therefore it is unnecessary to determine if the ALJ properly evaluated Dr. Wharton's other statements or if the previous decision is supported by substantial evidence. Finally, the question of whether or not the ALJ failed to properly apply the medical improvement test does not need to be addressed at this time because whatever error there may have been regarding the prior RFC can easily be remedied on remand.

## RECOMMENDATION

In light of the Court's finding that the Appeals Council failed to properly analyze Dr. Wharton's medical source statement, the Court recommends that the District Court REVERSE and REMAND the Commissioner's decision.

SO ORDERED. July 14, 2008.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).